## Squaw Island Freight Terminal Company, Inc., Plaintiff, *v.* City of Buffalo, Defendant.

Supreme Court, Erie County, January 13, 1938.

*Desbecker, Fisk, Newcomb & Deckop [James A. Deckop* and *Adrian Block* of counsel], for the plaintiff.

*Gregory U. Harmon, Corporation Counsel [Frank C. Westphal* of counsel], for the defendant.

HINKLEY, J. This is a hearing in the above-entitled action following an order of reversal and interlocutory judgment of the Appellate Division (246 App. Div. 472), as modified by the Court of Appeals upon certified questions (273 N. Y. 119).

The plaintiff sought damages and injunctive relief against the defendant municipality for the pollution of Niagara river adjacent to the property of the plaintiff known as Squaw island. The trial court gave judgment for defendant. Upon appeal the Appellate Division reversed the decision of the trial court and entered an interlocutory judgment in favor of the plaintiff, which was slightly modified by the Court of Appeals.

The record upon the trial preceding the interlocutory judgment consisted of over 4,100 folios. The decision of the trial court consisted of twenty-eight findings of fact and three conclusions of law. Plaintiff, which was the unsuccessful party at that time, proposed 276 findings of fact, upon which the trial court passed. The trial court filed a written memorandum; an opinion was written by Justice LEWIS of the Appellate Division, Fourth Department; an opinion was written by Judge FINCH of the Court of Appeals, and a dissenting opinion by Judge CRANE of the latter court.

The difficulty which confronted the Court of Appeals is apparent from the statement of Judge FINCH in the prevailing opinion (273 N. Y. 119, at p. 126) that "the order and judgment of the Appellate Division recited a reversal on the law and facts. Since only four

insignificant findings of fact were reversed, *this statement* in the order and judgment *must be applied in light of what the reversal actually accomplishes.*" Greater difficulty now confronts the trial court, as no clear, well-defined path has been indicated. The confusion at this time is increased by the further statement in the prevailing opinion of Judge FINCH that "*in effect the reversal left intact the findings of fact of Special Term.*" The Appellate Division might have made new findings of fact, in which event the Court of Appeals would have been compelled to review the facts. (*York Mortgage Corp.* v. *Clotar Const. Corp.*, 254 N. Y. 128, at p. 131.)

The Appellate Division was authorized in this case to render an interlocutory judgment. (*United Paper-Board Co.* v. *Iroquois Pulp & Paper Co.*, 217 App. Div. 253; affd., 249 N. Y. 588.)

Two questions arise. Shall the trial court now be guided by the provisions of the order and interlocutory judgment of the Appellate Division or by the result of the reversal? Are the findings of fact of the trial court actually intact as matter of law, or only for the purpose of a determination by the Court of Appeals of the questions certified to that court? The strictness with which a trial court must follow the order and direction of an appellate court is indicated in *Fried* v. *New York, N. H. & H. R. R. Co.* (183 App. Div. 115, at p. 123).

Analysis of the various orders, judgments and opinions limits this hearing to specific, narrow lines. It is clearly indicated by the terms of the order and interlocutory judgment of the Appellate Division that " the action be and the same is remitted to the Supreme Court at Special Term *for the purpose of* determining the amount of damages, *if any,* to which the plaintiff is entitled." We find in the prevailing opinion of the Court of Appeals the following quotation: " The Appellate Division further ordered that the action be remitted for the ascertainment of damages." (273 N.Y. 119, at p. 127.) Were it not for the use of the words " if any " no one would question that the case was remitted for an assessment of damages. The words " if any " are not confusing if taken in connection with the statement in the opinion of Judge FINCH (273 N. Y. 119, at p. 130) that " the lack of licenses [Federal licenses to dredge], therefore, cannot bar the plaintiff from recovering damages, but may be considered in mitigation of damages and even perhaps to the entire elimination thereof." The present lack of Federal license has not and does not in any manner affect the plaintiff's right to dredge. Upon this hearing proof has been adduced and not met that the dredging of Squaw island has not and will not interfere with navigation. There is no dispute of the clear testimony of plaintiff's hydraulic experts. They testified that because of the bottle-necks or controls in the river

above and below Squaw island, even if all of those parts of the island owned by the plaintiff were dredged out there would be no appreciable lowering of the level of Lake Erie or change in the regimen of the river or interference with the navigation of the river. The defendant has offered no proof that a permit or license to dredge had been or ever would be refused. There would be no way to anticipate the discretionary conduct of an administrative officer or board in the event of an application at present or in the future for a dredging license, and plaintiff of course could offer no proof upon that point. Particularly is this true as the personnel of any board may change any time, or new officials be substituted. It is axiomatic that the plaintiff's rights would remain sacred as against arbitrary or unlawful acts of those vested with discretionary power. The right of plaintiff as a riparian owner to dredge its land, therefore, remains absolute, so far as the evidence in this case is concerned. It follows that the lack of a present dredging license in no way affects or reduces plaintiff's damages.

The court upon a former hearing took testimony on the question of damages and made definite findings of fact not only in its decision, but at the request of the plaintiff. The findings made at plaintiff's request are of the same force and effect as though embodied in the decision. (*Bremer* v. *Manhattan R. Co.*, 113 App. Div. 905; modfd., 191 N. Y. 333; *Elterman* v. *Hyman*, 192 id. 113.) The trial court found that certain sand and gravel deposits on plaintiff's land under water east of the bulkhead line in May, 1927, were totally destroyed. (Plaintiff's request to find No. 146.) The trial court also found that at that time, in May, 1927, the area of lands under water owned by plaintiff east of the bulkhead line, between that line and the westerly shore line of Squaw island so destroyed, contained deposits of sand and gravel amounting to 1,238,000 cubic yards. (Plaintiff's request to find No. 160.) The trial court also found that the fair and reasonable value and the market value of the sand and gravel owned by plaintiff as it lay at the time of the total destruction thereof was twenty cents per cubic yard. (Plaintiff's request to find No. 188.) The findings of fact made at plaintiff's request, and above quoted, were never reversed or modified by the Appellate Division, but, as stated in the prevailing opinion of the Court of Appeals (273 N. Y. 119, at p. 126), were left intact. Further it appears that to actually accomplish the result achieved by the Appellate Division in its reversal and interlocutory judgment reliance must have been placed by that court upon the testimony or the findings of the trial court as embodied in plaintiff's requests, particularly plaintiff's request to find No. 146. This must be so, as there are not sufficient findings in the trial court's decision alone upon which to predicate the order and

interlocutory judgment of the Appellate Division. True it is that the Appellate Division in the case of *United Paper-Board Co. v. Iroquois Pulp & Paper Co.* (216 App. Div. 639, at p. 647) made " new findings to include plaintiff's requests." But such new findings were created out of certain plaintiff's requests to find, all of which the lower court refused to find. Here the trial court actually found certain requests for plaintiff which were not modified and which may explain the reason why the Appellate Division did not in this instance feel called upon to make new findings.

The Court of Appeals was required to accept the findings both in the decision and in plaintiff's requests except as modified or disapproved by the Appellate Division. The same obligation rests upon the court at this time. This court must take that view or else declare this a trial *de novo* of all the issues. In the event of a new trial the court could not establish plaintiff's damages without proving anew plaintiff's ownership of the land under water, its actual deposits of sand and gravel, the degree of the pollution of the same, and by what means such pollution arose, the area affected, the total cubic yardage and its market value. The defendant has had its day in court to meet the issue of damages, and is not entitled to obtain another or perhaps different decision by another trial justice of this court. To conduct a new trial upon this hearing would be an act unauthorized and clearly in contravention of the interlocutory judgment of the Appellate Division, which, as indicated in the prevailing opinion of the Court of Appeals, must be carried out (273 N. Y. 119, at p. 130).

By a simple mathematical computation of multiplying the cubic yardage of the deposits actually destroyed of the deposits of sand and gravel under water by the value per cubic yard as found by the trial court upon plaintiff's request, the plaintiff's damage of lands under water was $247,600.

The testimony of the former hearing was introduced in evidence and marked as an exhibit upon this hearing solely to permit the Appellate Division, if it has not already done so, to review that testimony and determine whether it is of sufficient weight to sustain the findings of the trial court upon the former hearing. For this there may be no established precedent. Yet if its introduction is error, it is harmless error. This decision is not based in whole or in part upon the testimony of the former hearing, for that would be contrary to law and precedent. (*Williamson* v. *Randolph*, 111 App. Div. 539, at p. 541; affd., 185 N. Y. 603.) The court was actuated by the same desire to expedite the determination of this litigation as inspired the entire court in *United Paper-Board Co.* v. *Iroquois Pulp & Paper Co.* (217 App. Div. 253).

Thus far we have discussed the situation with regard to the question of the plaintiff's damage to its land under water. There has been no finding or adjudication as to the damage to the uplands. The question was sharply litigated upon this hearing. The court is not satisfied that there is any permanent damage to the uplands by reason of the pollution of the river. The court has also determined that by June 30, 1938, the completion and operation of the extensive sewer project now in process of construction in the city of Buffalo will permanently obviate the pollution of which plaintiff complains. This will constitute a means adequate to avoid such pollution and will be in effect within a reasonable time. This disposes of the question of an injunction and fixes the measure of damages to the uplands to be the diminished rental or usable value of the property as it was in consequence of the loss by defendant's acts. (*Woolsey* v. *N. Y. E. R. R. Co.*, 134 N. Y. 323; *Ewanski* v. *Solvay Process Co.*, 227 App. Div. 597.) The court fixes that loss of rental value at $6,060 a year for eleven years and one month, from June 1, 1927, to June 30, 1938.

Based solely upon the undisputed findings of fact upon the former hearing, this court fixes plaintiff's damages for pollution of sand and gravel under water at $247,600, with interest thereon from June 1, 1927. By testimony upon this trial the court fixes plaintiff's damages to the uplands by reason of the pollution of adjacent water to be $67,165, computed upon 60.6 acres of uplands at the rate of $100 an acre for the period of eleven years and one month, with interest upon each annual aggregate of damage commencing June 1, 1928.

The demand for an injunction is refused. Judgment may be entered in accordance with this opinion, with costs to the plaintiff.